Per Curiam.
In March, 1806, Pearse had judgment against William Tipton and Rhea, for a thousand dollars. In April, 1807, they procured an injunction, which was dissolved; when issued, William Overstreet was surety for the complainants. William Tipton and his sons mortgaged a tract of land to him for his indemnification. Pearse sued Overstreet, and had judgment by confession for $1,272.09 in March term, 1808; Overstreet, in satisfaction thereof, assigned to him the mortgage. On the 5th of April, 1808, Pearse gave a receipt to Overstreet for the judgment and costs. A writing is read, purporting to be dated the 18th of February, 1808, and to be subscribed by Overstreet, whose handwriting is proved. It is not attested by a subscribing witness. It states a receipt by Overstreet from Tipton and sons of $14 for lying in jail two days, and for all damages and costs for having been surety for Rhea and Tipton in their bill in equity; and that the mortgage is to be void, having been complied with. On the 27th of July, 1808 Pearse filed his bill of foreclosure; in May, 1813, it was dismissed for want of prosecution. The costs accrued are $71. On the 30th of January, 1810, Pearse and William Tipton compromised. Pearse gave a receipt for $1,000 ; he received only $800, the amount of the judgment, as well as the original judgment, both in law and *70 equity, &c., and Pearse took from William Tipton a writing signed by him, in which he engages to pay all costs that are not paid at this date, in a suit or suits brought against the said William Tipton and Robert Rhea by the said James Pearse, both in law and equity. * The costs of the suit at law against Rhea and Tipton are yet unpaid; also those of the bill to foreclose. Are these costs to be paid by Tipton under the above agreement ? The costs were included in the judgment against Overstreet; and he substituted Tipton in his place by the assignment of the mortgage. Tipton became liable to pay the costs which Overstreet had been bound to pay.' This includes the costs of the suit at law against Rhea and Tipton; the costs of a suit or suits against Rhea and Tipton by the said’ Pearse in equity. Do these words include the suit in equity against Tipton ? We must assign to them a meaning ; we must not say they stand for nothing. They point to a suit in equity. And what suit is there brought against either the one or the other, but this to foreclose ? It is in common understanding a suit against Rhea and Tipton ; a discharge from it will be an eventual discharge from the suit at law, restoring them to their primitive situation. Tipton is the surety of Rhea; a discharge of him will exempt Rhea of any future responsibility to him. Both of them are deeply interested; it is, in reality, the suit of both, and would be so called by an unprofessional draftsman. It may be further said, though having somewhat the appearance of subtlety, that, in ordinary conversation and acceptation, a suit at law against Rhea, and a suit in equity against Tipton, would be a suit or suits against Rhea and Tipton, in law and equity. So, likewise, a suit in one court against Rhea and Tipton, and in the other against Tipton. A draftsman not accustomed to precision, would very probably describe them as in the agreement. The circumstance of giving a receipt for the principal, not speaking of the costs, indicates strongly that the costs were supposed to be provided for in the engagement signed by Tipton. They were not overlooked. They were the subject of much disputation at the very time when these writings were drawn. Silence respecting them in the receipt, is to be accounted for no otherwise * than by reference to Tipton’s undertaking. “ Not paid at this date." Why require of Tipton to pay costs unless for the indemnification of Pearse against a payment which otherwise he would have to make *71 himself? If the costs receipted for by Pearse to Overstreet are not-to be paid by Tipton, nor yet those in the bill of foreclosure, then no costs at all are to be paid by him, and then the whole agreement is nugatory. Tipton is liable for all the costs which, havingjiot been paid to the proper officer, he, Pearse, was any way liable for, whether by receipting to Overstreet or by dismission of his bill. Indeed, Rhea and Tipton were originally liable to the costs of the suit at law, and the agreement was less necessary as to these than for the dismission costs, for which it was peculiarly proper. As to .the receipt from Overstreet of the 18th of February, 1808, declaring the mortgage void, why did he not then give it up to Tipton ? Because he had it not to deliver, he had assigned it to Pearse. Why did Tipton satisfy the mortgage of the 80th January, 18l0? Because he owed it, notwithstanding what is stated in the receipt of the 18th of February, 1808. No one saw the large payments stated by the receipt to have been made when it bears date, or before. Common prudence would have suggested the propriety of having all the proof necessary to dispel doubts. Yet there is no such proof. Where is Overstreet ? Could he not give much information upon this subject ? He was not offered. Lastly, let us speak of the remedy, and of this court’s jurisdiction. If a surety be discharged at law, by accident or unskillfulness of the draftsman of an obligatory writing, of a contract which was intended to bind him, some authorities deny to a court of equity the power to subject him. 2 Wash. 136. The principle of these authorities may be the correct one. Here, however, Tipton is liable to pay, by the writing he has signed. And then it is conceived that this court, in point of jurisdiction, may proceed to compel him to * that indemnification of-the complainant which he has undertaken.
Decree that Tipton shall indemnify the complainant by payment to be made in three months of the sums due for costs in the suit at law against Rhea and Tipton, and in the suit in equity against William Tipton and the other defendants who were mortgagors in the mortgage given to Overstreet and by him assigned to Pearse. Otherwise, execution to issue for enforcing the payment thereof for the use of such persons who are entitled to said costs. The said costs and the amount thereof shall be ascertained by the clerk and master at this present term, and be reported to court within three days from this present day.